```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW HAMPSHIRE
```

Kathleen Elizabeth Gammon

    v.                                    Case No. 14-cv-510-PB
                                                Opinion No. 2016 DNH 005

Carolyn W. Colvin,
Acting Commissioner,
U.S. Social Security
Administration

**MEMORANDUM AND ORDER**

    Kathleen Elizabeth Gammon, a 51-year old Grafton woman, challenges the Social Security Administration's denial of her claims for disability insurance benefits ("DIB"). The Acting Commissioner, in turn, moves for an order affirming her decision. For the reasons that follow, I reverse the decision of the Acting Commissioner and remand for further administrative proceedings.

## I.   BACKGROUND

    In accordance with Local Rule 9.1, the parties have submitted a joint statement of stipulated facts (Doc. No. 14). See LR 9.1. Because that joint statement is part of the court's

record, I need not recount it here.  I discuss facts relevant to the disposition of this matter as necessary below.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), I have the authority to review the pleadings submitted by the parties and the administrative record, and to enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  That review is limited, however, "to determining whether the [Administrative Law Judge] used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  I defer to the Administrative Law Judge's (ALJ's) findings of fact, so long as those findings are supported by substantial evidence. Id. Substantial evidence exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'" Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the substantial evidence standard is met, the ALJ's factual findings are conclusive, even where the record "arguably could support a different conclusion." Id. at 770.  Findings

are not conclusive, however, if the ALJ derived his findings by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).  The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence in the record.  Irlanda Ortiz, 955 F.2d at 769.  It is the role of the ALJ, not the court, to resolve conflicts in the evidence. Id.

### III. ANALYSIS

Gammon is a 51-year old former waitress from Grafton, NH, with a history of anxiety.  She filed an application for DIB in March 2012, claiming disability as of April 1, 1993, her alleged onset date.  Doc. No. 14 at 1.  After her application was initially denied, a hearing was held before ALJ Ruth Kleinfeld. Id.  Following that hearing, the ALJ issued a written decision in May 2013 concluding that Gammon was not entitled to DIB because her disability did not begin prior to December 31, 1998, her date last insured.  See Tr. at 23-31 (ALJ's written decision).

The ALJ focused her analysis on whether Gammon was disabled prior to her date last insured.  At step one, the ALJ found that Gammon had not engaged in substantial gainful activity between

3

the alleged onset date of her disability and her date last insured. Tr. at 25. At step two, the ALJ determined that Gammon suffered from anxiety during that period, which the ALJ considered a "severe" impairment for "the purposes of this decision." Tr. at 25. At step three, however, the ALJ found that Gammon's anxiety did not meet or medically equal the criteria of listing 12.06, which covers anxiety-related disorders. Tr. at 26-27. The ALJ then assessed Gammon's Residual Functional Capacity ("RFC"), concluding that Gammon could "perform work at all exertional levels involving work at a socially isolated work station and avoiding work with the general public." Tr. at 27. Jumping to step five, the ALJ noted that Gammon suffered only a "non-exertional impairment," anxiety. Tr. at 30. Without calling a vocational expert, the ALJ then used the Medical-Vocational Guidelines (the "Grid") to conclude that jobs existed in the national economy that Gammon could perform given her limitations. Tr. at 30-31. As such, according to the ALJ, Gammon was "not disabled."[1] Tr. at 31.

In September 2014, the Appeals Council denied Gammon's request for review. Tr. at 1. As a result, the ALJ's decision

---

[1] Again, as stated above, the ALJ's decision focused exclusively on Gammon's status from April 1, 1993, her alleged onset date, and December 31, 1998, her date last insured, and not whether Gammon was disabled at the time of her application. See Tr. at 31.

4

constitutes the Commission's final decision, and this matter is now ripe for judicial review.

Gammon raises three main challenges to the ALJ's decision. First, she claims that the ALJ failed to follow the "treating physician rule" because she accorded only "slight weight" to Gammon's treating physician, and thus incorrectly calculated her RFC.  Second, she alleges that the ALJ failed to properly evaluate her credibility.  And third, Gammon asserts that the ALJ inappropriately relied on the Medical-Vocational Guidelines (the "Grid") in concluding that she could perform work in the national economy.  After carefully considering the arguments of both sides, I conclude that the ALJ impermissibly relied upon the Grid at step five, and order a remand.

Gammon argues that the ALJ erred by relying on the Grid, rather than a vocational expert, to determine that jobs existed in the national economy that Gammon could perform.  Doc. No. 10 at 10-12.  I agree with Gammon and conclude that the ALJ should have consulted a vocational expert because Gammon's limitations were solely nonexertional.

At step five, the Commissioner bears the burden of establishing that jobs exist in the national economy that the claimant can perform given her RFC.  Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).  If the claimant's limitations

5

are exclusively "exertional," or "strength" limitations, then the Commissioner may meet her burden by relying exclusively upon the Grid.[2]  Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) ("The Grid is designed to enable the Secretary to satisfy this burden in a streamlined fashion without resorting to the live testimony of vocational experts.") (internal quotations omitted).  Where, however, the claimant has solely "nonexertional limitations," such as a mental impairment, then the Grid may only serve as a "framework to guide [the] decision."  Seavey, 276 F.3d at 5 (citing 20 C.F.R. § 416.969a(d)).  Indeed, the regulations state that "the [medical-vocational guidelines] do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments."  20 C.F.R. Pt. 404, Subpt. P, App. 2, 200.00(e)(1).  As such, in cases involving only nonexertional impairments, the Commissioner must carry her burden of proving the availability of jobs in the national

---

[2] "The Grid, as it is known, consists of a matrix of the applicant's exertional capacity, age, education, and work experience.  If the facts of the applicant's situation fit within the Grid's categories, the Grid directs a conclusion as to whether the individual is or is not disabled."  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (internal quotations omitted) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a)).

economy by other means, typically through the use of a vocational expert.  Id.; see Ortiz, 890 F.2d at 524.

Here, Gammon's only impairment was anxiety, a nonexertional limitation, which limited her to working in a "socially isolated work station" and "avoiding the general public."  Tr. at 30 (ALJ noting that "the claimant's ability to perform work at all exertional levels was compromised only by nonexertional limitations.").  Despite recognizing that Gammon's limitations were solely nonexertional, however, the ALJ declined to call a vocational expert to analyze whether Gammon's limitations affected her ability to perform unskilled work.  See Tr. at 30-31.  Rather, the ALJ declared that Gammon's limitations "have little or no effect on a wide occupational base of unskilled work at all exertional levels" – without explaining how she arrived at that conclusion – and used the Grid to find that Gammon was "not disabled."  Tr. at 30-31.

The ALJ's reliance on the Grid was impermissible here.  As stated above, in cases involving exclusively nonexertional impairments, the Grid may only serve as a "framework to guide [the ALJ's] decision," not as a means to direct a factual conclusion of disabled or not disabled.  Seavey, 276 F.3d at 5; see 20 C.F.R. Pt. 404, Subpt. P, App. 2, 200.00(e)(1).  Yet here, the ALJ expressly used the Grid to direct a factual

7

finding of "not disabled."  Tr. at 30-31.  This reliance on the Grid was unacceptable, and now warrants a remand.[3]  Because I remand the case on this basis, I need not address Gammon's other arguments.

---

[3]  The Commissioner argues that the ALJ permissibly used the Grid through an exception that applies when the nonexertional impairments "impose no significant restriction on the range of work a claimant is exertionally able to perform," or if the limitations only "marginally" reduce a claimant's occupational base.  Ortiz, 890 F.2d at 524.

This argument fails, however, because the Ortiz exception only applies to cases where a claimant has *both* exertional and nonexertional limitations.  See id. (noting Ortiz suffered from both exertional and nonexertional limitations); see also Falcon-Cartagena v. Comm'r of Soc. Sec., 21 F. App'x 11, 13-14 (1st Cir. 2001) (same); Hines v. Astrue, 2012 DNH 121 (same).  Where, as here, a claimant suffers *only* nonexertional impairments, the regulations make clear that the Grid may not be solely relied on.  20 C.F.R. Pt. 404, Subpt. P, App. 2, 200.00(e)(1).  Instead, the Grid may only serve as a "framework," to be supplemented by other evidence, typically a vocational expert. Seavey, 276 F.3d at 5; Ortiz, 890 F.2d at 524.

Moreover, even in cases involving both exertional and nonexertional limitations, Ortiz cautions that ALJs "typically should err on the side of taking vocational evidence when [significant nonexertional limitations] [are] present."  890 F.2d at 528 (noting that "this is an unusual instance where [sole] reliance on the Grid is permissible").  When ALJs make the rare decision to rely solely on the Grid, they should "enumerate[] more clearly and in greater detail" the "evidentiary support for that decision."  Id.  Here, even if the exception applied, the ALJ offered no evidentiary support for her conclusion that Gammon's limitations had "little or no effect on a wide occupational base of unskilled work."  Tr. at 30.  Indeed, the ALJ does not explain why Gammon's restrictions – working in a socially isolated setting and avoiding the general public – would not "significantly" affect her ability to perform even an unskilled job.  At minimum, the ALJ would have needed to "enumerate more clearly" the evidentiary support for her finding.  See Ortiz, 890 F.2d at 528.

**IV.   CONCLUSION**

For the foregoing reasons, I deny the Commissioner's motion to affirm (Doc. No. 13) and grant Gammon's motion to reverse or remand (Doc. No. 8).  Pursuant to sentence four of 42 U.S.C. § 405(g), I remand the case to the Social Security Administration for further proceedings consistent with this decision.

SO ORDERED.


                                   /s/Paul Barbadoro
                                   Paul Barbadoro
                                   United States District Judge
January 6, 2016

cc:  Eddy Pierre Pierre, Esq.
     Brenda Golden Hallisey, Esq.
     Michael McCormack, Esq.